In the United States District Court
for the District of Kansas

——————————

Case No. 25-cv-04034-TC

——————————

PATRICK DAVID ARCHER,

*Plaintiff*

v.

ANDREA TAPIA, ET AL.,

*Defendants*

——————————

## ORDER

Patrick Archer, proceeding pro se, sued Andrea Tapia, the Kansas Department for Children and Families, and the Kansas City Board of Public Utilities, alleging that the defendants violated his civil rights. Doc. 1. All of the defendants separately moved to dismiss. Docs. 13, 23, & 24. For the following reasons, the defendants' motions to dismiss are granted. As a result, the remaining motions are denied as moot. Docs. 48, 51, 52, 53, 69, & 74.

## I

## A

Each ground on which the defendants seek dismissal has a different standard that governs its resolution. And Archer's pleadings are subject to certain standards that apply only to pro se plaintiffs. The following describes each applicable standard.

**1.** The KDCF and Tapia assert that there is no subject-matter jurisdiction over Archer's claims. Docs. 23 & 25. A party may move to dismiss for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1). There are, generally speaking, two ways to challenge subject-matter jurisdiction, one being facial and the other being factual. *Laufer v. Looper*, 22 F.4th 871, 875 (10th Cir. 2022). A facial challenge accepts the facts in

1

the complaint as true but argues they fail to state a basis for jurisdiction, while a factual attack contests the validity of jurisdictional facts. *Id.* Either way, "[t]he objection that a federal court lacks subject-matter jurisdiction . . . may be raised . . . at any stage in the litigation." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006) (citing Fed. R. Civ. P. 12(b)(1) and 12(h)(3)). An objection to a plaintiff's standing is an objection that a federal court lacks subject-matter jurisdiction. *See Baker v. USD 229 Blue Valley*, 979 F.3d 866, 868 (10th Cir. 2020).

**2.** All of the defendants move to dismiss. The rules of civil procedure permit dismissal if it appears the complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6); *see also* Doc. 23 at 2; Doc. 25 at 7.

To survive a motion to dismiss for failure to state a claim, the complaint need only contain "a short and plain statement . . . showing that the pleader is entitled to relief" from each named defendant. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Two "working principles" underlie this standard. *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). First, a court ignores legal conclusions, labels, and any formulaic recitation of the elements. *Penn Gaming*, 656 F.3d at 1214. Second, a court accepts as true all remaining allegations and logical inferences and asks whether the claimant has alleged facts that make his or her claim plausible. *Id.*

A claim need not be probable to be considered plausible. *Iqbal*, 556 U.S. at 678. But the facts, viewed in the light most favorable to the claimant, must move the claim from conceivable to plausible. *Id.* at 678–80. The "mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

Plausibility is context specific. The requisite showing depends on the claims alleged, and the inquiry usually starts with determining what the plaintiff must prove at trial. *See Comcast Corp. v. Nat'l Assoc. of African Am.-Owned Media*, 589 U.S. 327, 332 (2020). In other words, the nature and complexity of the claim(s) define what plaintiffs must plead. *Cf. Robbins v. Oklahoma*, 519 F.3d 1242, 1248–49 (10th Cir. 2008)

(comparing the factual allegations required to show a plausible personal injury claim versus a plausible constitutional violation).

**3.** These rules do not operate in a vacuum. When a plaintiff, such as Archer, proceeds pro se, a court must construe his or her pleadings generously. *See Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009). That generosity means a court should overlook the failure to properly cite legal authority, confusion of various legal theories, and apparent unfamiliarity with pleading requirements. *Id.* But it does not permit a court to construct legal theories on the plaintiff's behalf or assume facts not plead. *See id.*; *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

## B

Plaintiff, Patrick Archer, brought this civil rights action against Andea Tapia, who is alleged to be the Executive Director of the Kansas Housing Authority, the Kansas Department for Children and Families, and the Kansas City Board of Public Utilities. Doc. 1 at 1-2.[1] It concerns charges for stormwater in his state-owned housing. The following attempts to describe the factual history that can be deduced from the handwritten Complaint and accompanying affidavit. Docs. 1 & 1-1.

Archer moved into Welborn Villa, a property he alleges is owned by the KHA. Doc. 1-1 at 1.[2] When he moved in, he received a yellow card from a KHA staff member that provided his costs for rent, deposit, and electric. *Id.* The card did not include dollar amounts for water, waste management, and stormwater. *Id.*

The basis of this suit is Archer contends he was charged a fee for stormwater drainage in contravention of this yellow card. Doc. 1-1 at 1–2. Archer asserts that he should not have received the stormwater charge because the yellow card did not provide dollar amounts for stormwater, or alternatively, because he receives federal utility assistance funding that should have covered the expense. *See id.* at 1–3.

---

[1] All references to the parties' briefs are to the page numbers assigned by CM/ECF.

Archer alleges that he receives federal utility assistance funding through the Low Income Energy Assistance Program. Doc. 1-1 at 2–3. He asserts that all of the defendants are responsible for ensuring that his federal utility assistance is applied properly. *See id.* at 1–3. In particular, he alleges that Tapia failed to register his information with the BPU. *Id.* at 2. He then alleges that the BPU "is taking advantage" of Tapia's failure by continuing to charge him and other "elderly and disabled person(s)" for stormwater, which has caused overdue accounts, resulting in evictions. *Id.* at 3. Finally, he alleges that he told the KDCF that Tapia failed to register his information with the BPU and that it did nothing to help. *See* Doc. 1 at ¶ III.

Based on these events, Archer brought this suit against the defendants seeking money damages. Doc. 1. The defendants separately moved to dismiss Archer's claims, making various arguments as to why Archer's claims should be dismissed. *See generally* Docs. 13, 23, & 24.

## II

Archer, though he has standing, fails to state a claim.[3] As to the BPU, it is not an entity capable of being sued. With regard to his constitutional claims, the allegations fail to assert a viable cause of action against any of the remaining defendants. And finally, there is no plausible violation of Title II of the Americans with Disability Act against the defendants. As a result, Archer's case against all defendants is dismissed.

### A

Archer's claim against the BPU fails because it is not an entity that is capable of suing or being sued under Kansas law. Under Kansas law, "[s]ubordinate government agencies, in the absence of statutory

---

[2] Tapia and the KDCF separately move to dismiss under 12(b)(1), arguing Archer lacks standing to bring a claim and/or failed to comply with the notice obligations of K.S.A. § 12-105b. Doc. 23 at 3; Doc. 25 at 8. That claim must be considered before the merits. *Griffith v. El Paso Cnty.*, 129 F.4th 790, 835 (10th Cir. 2025) (citing 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure Civ.* § 1350 (4th ed. 2024)). Those claims fail because Archer's subsequent briefing disclaimed any state law claim for which notice would be required and Archer's Complaint has sufficiently alleged injury in fact insofar as he brings his own claims against the defendants. *Contra* Doc. 23 at 4; *see Friends of the Earth, Inc.*, 528 U.S. 167, 180–81 (2000).

authorization, ordinarily do not have the capacity to sue or be sued." *Mashaney v. Bd. of Indigents' Def. Servs.*, 355 P.3d 667, 672 (Kan. 2015) (citing *Hopkins v. State*, 702 P.2d 311, 316 (Kan. 1985)). And the statute creating the BPU, K.S.A. § 13-1223, requires that all claims against it must be made "only in the name of and on behalf of the city." As a result, Archer's claim—which only names the BPU—must be dismissed. *Kerr v. Unified Gov't of Wyandotte Cnty./Kan. City, Kan.*, No. 21-2135, 2021 WL 4806391, at *2–3 (D. Kan. Oct. 14, 2021) (dismissing case pled against BPU after canvassing multiple decisions reaching the same result); *accord Cross v. City of Kan. City*, 638 P.2d 933, 937 (Kan. 1982) (recognizing the BPU is not an entity capable of suing or being sued); *see also Mayfield v. Harvey Cnty. Sheriff's Dep't*, 732 F. App'x 685, 688 (10th Cir. 2018) (affirming dismissal of sheriff's department because it was not an entity capable of suing or being sued).

## B

Archer asserts Tapia, BPU, and KDCF violated his constitutional rights. He proceeds under 42 U.S.C. § 1983.[4] *See* Doc. 45 at 2. Section 1983 provides that "[e]very person who, under color of [state law,] subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. It creates no substantive rights but merely provides a mechanism for enforcing a right conferred by the Constitution or a federal statute. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002); *see also Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166, 174–75 (2023).

---

[3] Archer attempts to invoke 42 U.S.C. § 1983 and to allege various constitutional violations against the defendants in places other than in the Complaint. *See* Doc. 2 (civil cover sheet); *see also* Doc. 45 (response brief). Those efforts are precluded. *Brown v. City of Tulsa*, 124 F.4th 1251, 1263 (10th Cir. 2025). But, out of an abundance of caution and in deference to Archer's status as a pro se litigant, the following attempts to consider contentions Archer makes outside of his Complaint. *Cf. Avant v. Doke*, 104 F.4th 203, 210 (10th Cir. 2024) (invoking its discretion to consider new case citations provided during supplemental briefing on an issue)*; Hayes v. Whitman*, 264 F.3d 1017, 1025 (10th Cir. 2001) (considering additional facts or legal theories asserted in response brief that were consistent with the facts and theories advanced in the complaint).

**1**

Archer asserts several individual-capacity claims against Tapia and she, in turn, asserts that she is entitled to qualified immunity. Doc. 25 at 4–6. Qualified immunity attempts to balance competing interests. Suits against government actors allow those wronged by government misconduct a method of redress. *See Anderson v. Creighton*, 483 U.S. 635, 638 (1987) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 814 (1982)). But non-meritorious suits exact a high cost from society and government officials by unduly interfering with the discharge of official duties. *See id.*; *see also Horstkoetter v. Dep't of Pub. Safety*, 159 F.3d 1265, 1277 (10th Cir. 1998). So government officials performing discretionary duties are immune from suit when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable official would have been aware. *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *see also Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (recognizing municipalities may not rely on their officers' entitlement to qualified immunity). Whether an official is immune turns on the objective reasonableness of the official's actions, considering the laws clearly established at the time the official acted. *See Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012). Objective reasonableness is not an exacting standard; qualified immunity protects all but the plainly incompetent or those who knowingly violate the law. *See White v. Pauly*, 580 U.S. 73, 79 (2017); *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

The analytical framework for the invocation of qualified immunity at the Rule 12 stage is settled. *See, e.g.*, *City of Tahlequah, Okla. v. Bond*, 595 U.S. 9, 12 (2021) (per curiam); *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021) (per curiam). First, the complaint must allege conduct that, assuming the allegations are true, violates the Constitution or laws of the United States. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). Second, the law must have been clearly established at the time of the alleged conduct such that the defendant had fair notice that his or her conduct was unlawful. *See District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018). If both inquiries are answered in the affirmative, the motion to dismiss must be denied. But, if the answer to either is no, the defendant is

entitled to judgment as a matter of law. *Henry v. Ross*, 62 F.4th 1248, 1253 (10th Cir. 2023).[5]

Archer's claims against Tapia assert that she violated his Fourteenth Amendment rights. *See* Doc. 45 at 2; *see also* Doc. 74 at 4. But he has not plausibly alleged that Tapia's conduct violated the Constitution or laws of the United States. As a result, Tapia's motion to dismiss is granted.

**a.** Archer first alleges a procedural due process claim, that Tapia deprived him of his funds without due process in violation of the Fourteenth Amendment. Doc. 74 at 2. Specifically, he alleges that Tapia "violated [his] rights set forth in the 'lease agreement' with regards to responsibility of charges [he] was to be responsible for while living at [Welborn Villa]." *Id.* He further alleges that Tapia "did in fact commit an overt act by not including the utility charge of 'stormwater' as part of the lease agreement, which controls an aspect of his physical rent charge monthly." *Id.* In Archer's affidavit, he also suggests that he receives utility assistance from the Low Income Energy Assistance Program that should have been used to pay the stormwater charge. *See* Doc. 1-1 at 2–3. Construed generously, Archer alleges that he was deprived of the property interest created by either his lease agreement or the Low Income Energy Assistance Program without due process when the BPU charged him for stormwater. *Id.*

To state a due process claim, the plaintiff must possess a protected liberty or property interest that triggers due process protections and, if the individual is deprived of that interest, he or she must be afforded the appropriate level of process. *Roberts v. Winder*, 16 F.4th 1367, 1377 (10th Cir. 2021). The Tenth Circuit provides that "the procedural due process analysis is not a technical conception with a fixed content unrelated to time, place and circumstances, but rather is flexible and calls for such procedural protections as the particular situation demands."

---

[4] Courts have discretion to address the inquiries in any order, as courts must "think carefully before expending 'scarce judicial resources' to resolve difficult and novel questions of constitutional or statutory interpretation that will 'have no effect on the outcome of the case.'" *al-Kidd*, 563 U.S. at 735 (quoting *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)); *Kisela v. Hughes*, 584 U.S. 100, 103–04 (2018).

*M.A.K. Inv. Grp., LLC v. City of Glendale*, 897 F.3d 1303, 1309 (10th Cir. 2018) (citation omitted).

Assuming that Archer has been deprived of a protected property interest, he has not plausibly alleged that he was denied the appropriate level of process.[6] *Lujan v. G&G Fire Sprinklers, Inc.*, 532 U.S. 189, 196 (2001) (assuming without deciding that there was a property interest in order to reach the second element of a due process claim—the adequacy of process). Archer alleges that KHA breached its lease agreement with him by causing him to incur a fee that was not outlined in the agreement. *See* Doc. 1-1 at 1–2. That is a contract-based deprivation and, as a result, the only process Archer is due lies in a state court remedy for breach of contract damages. *Lujan*, 532 U.S. at 197 (concluding that if a state "makes ordinary judicial process available to [a private party] for resolving its contractual dispute, that process is due process"). Archer makes no argument to the contrary. Accordingly, Archer's property interest arising out of his lease agreement "can be fully protected by an ordinary breach-of-contract suit." *Id.* at 196.

**b.** Archer also alleges that Tapia violated his Fourteenth Amendment right to equal protection. Doc. 74 at 2. "The Equal Protection clause is essentially a direction that all persons similarly situated should be treated alike." *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1146 (10th Cir. 2023) (internal quotations and citations omitted). To state a Section 1983 equal protection claim, "a plaintiff must allege the existence of purposeful discrimination against [himself], as a class of one or with respect to a group, causing an adverse effect." *Id.* (citation omitted). The party alleging an equal protection violation bears the

---

[5] It is not clear from Archer's pleadings whether he is suing Tapia because one of her subordinates violated his constitutional rights or simply because she is a supervisor for the KHA. To the extent he seeks to impose supervisory liability on Tapia, the claim fails because he would need to allege that one of Tapia's subordinates violated his rights and then establish she personal participated in a violation that caused his deprivation with the appropriate state of mind. *Wise v. Caffey*, 72 F.4th 1199, 1210 (10th Cir. 2023). Archer's Complaint, affidavit, and other papers are devoid of allegations that anyone Tapia supervises violated his rights and, as a result, his claims fail. *Rowell v. Bd. of Cnty. Comm'rs*, 978 F.3d 1165, 1175 (10th Cir. 2020) ("Supervisors cannot be liable under 42 U.S.C.S. § 1983 where there is no underlying violation of a constitutional right by a supervisee."); *Est. of George v. City of Rifle*, 85 F.4th 1300, 1321 (10th Cir. 2023) ("[W]ithout an underlying constitutional violation, a claim of supervisory liability is fatally infirm.") (citations omitted).

burden of "proving the existence of purposeful discrimination causing an adverse effect." *Ashaheed v. Currington*, 7 F.4th 1236, 1250 (10th Cir. 2021) (internal quotations and citations omitted). After a plaintiff shows discriminatory intent and an adverse effect, the court applies the appropriate level of scrutiny to the government action. *Id.* Archer alleges that he is disabled, which "trigger[s] rational-basis review." *Marks v. Colo. Dep't of Corr.*, 976 F.3d 1087, 1091 (10th Cir. 2020) (citing *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 367 (2001)). But "[c]onclusory allegations without facts that refer to a particular person or persons treated differently are insufficient to state a claim." *Lucas*, 58 F.4th at 1146.

Archer's allegations fail to allege a plausible equal protection claim. Besides referencing that he has a disability, Archer fails to allege any facts related to his equal protection claim. *See* Doc. 74 at 1–2 (referencing his disability and then alleging that Tapia violated his equal protection rights based solely on the fact that he was charged for stormwater even though that expense was not listed in the lease agreement). Nor does he point to any similarly situated individual who was treated differently. That will not do. *See Lucas*, 58 F.4th at 1146 (affirming district court's denial of Plaintiff's equal protection claim because the allegations were "general and without any facts suggesting differential treatment").

**c.** Archer also alleges that Tapia conspired with several individuals and entities that are not parties to this suit to violate his constitutional rights. Doc. 1-1 at 6. But there is no free-standing conspiracy claim under Section 1983. *See Dixon v. City of Lawton*, 898 F.2d 1443, 1449 n.6 (10th Cir. 1990). Instead, conspiracy in the context of Section 1983 is a means by which multiple actors can be liable for the same underlying constitutional violation. *Id.* Because Archer did not plausibly allege an underlying constitutional violation, he has not stated a claim for relief based on conspiracy liability. *See Hinkle v. Beckham Cnty. Bd. of Cnty. Comm'rs*, 962 F.3d 1204, 1231 (10th Cir. 2020) (affirming the dismissal of a Section 1983 claim that defendants conspired to make a false arrest because the plaintiff failed to plausibly allege the underlying constitutional violation of a false arrest).

### 2

Archer seeks to impose liability on Tapia in her official capacity. *See* Doc. 1-1 at 1–3. But an official-capacity claim is really a claim

against her employer, the KHA. *See Brown v. City of Tulsa*, 124 F.4th 1251, 1263 (10th Cir. 2025).

That claim fails. For one thing, the Complaint fails to assert a plausible claim that Tapia violated Archer's constitutional rights. *See Frey v. Town of Jackson*, 41 F.4th 1223, 1239 (10th Cir. 2022) (dismissing a municipal liability claim because the plaintiff did not allege an underlying constitutional violation and therefore could not "recover simply because some municipal policy might have authorized an officer to violate the Constitution"); *Crowson v. Wash. Cnty. Utah*, 983 F.3d 1166, 1187 (10th Cir. 2020) (noting that failure-to-train liability requires an underlying constitutional violation by one of the municipality's employees). For another, there are no allegations that the KHA could be held responsible for the acts of Tapia under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). *See Whitson v. Bd. of Cnty. Comm'rs of the Cnty. of Sedgwick*, 106 F.4th 1063, 1072 (10th Cir. 2024) ("[A] municipality would not be liable simply because of misconduct by employees acting within the scope of their employment. Rather, the conduct must be fairly attributable to the municipality.") (internal quotations and citation omitted). As a result, Archer's claims against Tapia in her official capacity fail.

**3**

Finally, Archer brings a Section 1983 claim against the KDCF. Doc. 1 at 2. Archer asserts that the KDCF was aware that Tapia failed to register his information with the BPU and, as a result, the BPU was pocketing money that should have been applied to his account to pay for stormwater. *See* Doc. 45 at 3. Construed generously, Archer seems to allege that the KDCF's liability stems from its position as the entity that is responsible for administering the Low Income Energy Assistance Program, the funds Archer alleges should have been applied to his utility account to pay for stormwater. *See id.*

That claim fails for a variety of reasons. For example, Archer has failed to allege Tapia (or her employer) violated his constitutional rights. In addition, even if Tapia or her employer had violated Archer's rights, there is no indication that a state agency, the KDCF, could be held responsible for Tapia's conduct. *Murphy v. City of Tulsa*, 950 F.3d 641, 644 (10th Cir. 2019) (concluding that the individual's conduct did not trigger municipal liability because there was no evidence of a municipal custom or policy permitting the conduct). And finally, the KDCF is entitled to Eleventh Amendment immunity. *See Couser v. Gay*,

959 F.3d 1018, 1022 (10th Cir. 2020) ("Eleventh Amendment immunity applies not only to a state but to an entity that is an arm of the state."); *see also McCollum v. Kansas*, No. 14-1049, 2014 WL 3341139, at *6 (D. Kan. July 8, 2024), *aff'd*, 599 F. App'x 841 (10th Cir. 2015) (finding DCF is an arm of the state).

## C

Archer also asserts that the defendants violated Title II of the Americans with Disability Act of 1990, 42 U.S.C. § 12131 *et seq.*, based on Tapia's alleged failure to register his information with the BPU and the BPU's and KDCF's unwillingness to intercede. *See* Doc. 1-1 at 6; *see also* Doc. 74 at 1. Title II of the ADA "makes it illegal for a 'public entity' to discriminate against a qualified individual with a disability in the provision of government programs, activities, and services." *Brooks v. Colo. Dep't of Corr.*, 12 F.4th 1160, 1167 (10th Cir. 2021) (citing 42 U.S.C. § 12131). To state a claim under Title II of the ADA, a plaintiff must show that he or she is a "qualified individual with a disability," was "excluded from participation in or denied the benefits of services, programs, or activities," and "such exclusion, denial of benefits, or discrimination was by reason of his [or her] disability." *Est. of Beauford v. Mesa Cnty., Colo.*, 35 F.4th 1248, 1276 (10th Cir. 2022) (quoting 42 U.S.C. § 12132).

Archer fails to allege a plausible Title II claim. First, Tapia is not amenable to suit under Title II in her individual capacity. *Cf. CSMN Invs., LLC v. Cordillera Metro. Dist.*, 956 F.3d 1276, 1281 n.6 (10th Cir. 2020 (citing 42 U.S.C. § 12131(1), which defines "public entity" to include "any . . . special purpose district, or other instrumentality of a State or States or local government," to conclude individuals were not amenable to a Title II suit). Second, Archer fails to allege he was denied benefits by anyone because of his alleged disability. *See Crane v. Utah Dep't of Corr.*, 15 F.4th 1296, 1313 (10th Cir. 2021) (concluding the ADA claim failed because the Amended Complaint failed to allege that the individual's disability was a but-for cause of the alleged discrimination). As a result, his Title II claim fails.

## III

For the foregoing reasons, the BPU's, Tapia's, and KDCF's motions, Doc. 13, 23, & 24, are GRANTED. As a result, the remaining motions, Docs. 48, 51, 52, 53, 69, & 74, are DENIED as MOOT.

11

It is so ordered.


Date: January 30, 2026                 s/ Toby Crouse
                                       Toby Crouse
                                       United States District Judge